UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| JAUSTON HUERTA, *et al.*, | ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | No. 2:16-cv-397-JMS-MJD |
| JOHN PLASSE, *et al.*, | ) ) ) | |
| Defendants. | ) ) | |

**Motion for the Court to Invite Stakeholders to Confer Concerning the Population of the Vigo County Jail**

Plaintiffs, by counsel, state that:

1. Although the new Vigo County Jail has been built and will, presumably, be ready for occupancy in the near future, plaintiffs' counsel has concerns that the Jail may be overcrowded on the first day it is occupied by prisoners or shortly thereafter.

2. The new jail facility has 495 beds, a marked improvement over the 268 beds in the current facility. (Dkt. 399-1 at 22:13-16).

3. However, as this Court has noted in its decision granting plaintiffs partial summary judgment (Dkt. 146 at 4-5), a jail is overcrowded when it is above 80% of its maximum capacity. As noted by the Court, former "Sheriff Ewing agree[d] that when the Jail rises above 80% of its capacity, the Jail is not able to properly classify inmates so that all inmates and staff are kept safe." (*Id.* at 5).

4. In the case of the new jail, this means it is functionally overcrowded when it has more than 396 prisoners, 80% of the 495 available beds.

[1]

5. Undersigned counsel receives daily population reports for the Jail. Between August 1 and August 13, 2022, there were on average 355.6 prisoners housed in the old Vigo County Jail with an average of 45 prisoner being placed in out-of-county jails each day.

6. Were the 45 prisoners placed in out-of-county jails returned to Vigo County, this would total slightly more then 400 prisoners in the Vigo County Jail.

7. Counsel for the Sheriff has reported that he will continue to keep 40 to 50 jail beds available in other counties after the new Vigo County Jail is opened to prevents its functional overcrowding as soon as it is opened.

8. This plan to prevent overcrowding is problematic for a number of reasons.

- Housing prisoners out-of-county means that Vigo County is depending on those counties continuing to have available beds and continuing to allow Vigo County to house its prisoners in their county in perpetuity. There is no certainty of this.

- Housing prisoners out of the county costs Vigo County an enormous amount of money. In response to an inquiry from undersigned counsel, defendants' counsel, David Friedrich, indicated that the current per diem for these out-of-county jail beds is $35 for each bed. As noted above, the County is going to have to commit to paying that amount each day for 40 to 50 out-of-county jail beds to secure the beds for use by the Vigo County Sheriff. This comes to between $511,000 (at 40 beds per day) and $638,750 (at 50 beds per day) each year. Additionally, the Sheriff will have to commit some of his staff—a scarce commodity—to transporting prisoner back and forth from the out-of-county jails. The taxpayers of Vigo County can rightfully question why tax dollars have to be spent to place prisoners in out-of-county jails when there is a brand-new jail facility in Vigo County.

- Planning to place prisoners out of the county does not provide an opportunity for the stakeholders in the Vigo County criminal justice system to review all aspects of the system that impact on the population of the Vigo County Jail. Such a systemic review may demonstrate that there are things that can be done now that will ameliorate the population pressures on the Jail. In undersigned

counsel's experience, without addressing systemic influences on the population of county jails, the population will inevitably increase.

9. Counsel represented the prisoners confined in the Marion County Jail during litigation where, as in this case, a district court had entered orders designed to ameliorate unconstitutional conditions caused, in large part, by overcrowding. (*Marion County Jail Inmates v. Anderson*, No. IP 72-0424-C B/S [S.D. Ind.]). In that case, after an informal conversation with Judge Barker, the district court judge presiding in the case, the various stakeholders in the Marion County criminal justice system, most prominently the state criminal court judges, assumed responsibilities for examining the county's criminal justice system and making appropriate orders to allow cases to proceed through the system more quickly. This enabled the days that prisoners spent in jails to be significantly reduced, which in turn reduced the population of the jail.

10. Undersigned counsel is well aware that the Court is familiar with the Marion County experience as Judge Magnus-Stinson served as a Superior Court judge with criminal jurisdiction in Marion County during part of this time and served as an Associate Presiding Judge on a panel of three judges that was responsible for issuing those appropriate orders.

11. Undersigned counsel understands that this Court is constrained by the Prison Litigation Reform Act, as well as principles of federalism, from issuing expansive orders in this case and the Court certainly cannot order non-parties to do anything at this juncture.

12. On the other hand, if the new Jail is overcrowded immediately upon its opening and constitutional difficulties soon arise, as they inevitably do in overcrowded jails, then undersigned counsel, as counsel for the class, will be placed in the situation of having to return to this Court to seek contempt and even, perhaps, a three-judge court pursuant to 18 U.S.C. § 3626(a)(3).

13. Counsel does not claim any special expertise in the precise way that the population problems facing the Vigo County Jail can be resolved. And counsel certainly has no expertise in the workings of the Vigo County criminal justice system and realizes that he is being more than slightly presumptuous in filing this motion.

14. However, counsel is doing so not as an adversarial tactic, but as a way to attempt to resolve a problem that is continuing to threaten the safety and constitutional rights of his clients—the persons incarcerated in the Vigo County Jail.

15. It is important to address this problem at this time for another reason. Through the commendable efforts of the Sheriff and the County Council, changes have been made that have resulted in more officers being hired to work in the facility, although that facility is not yet fully staffed. Undoubtedly part of the draw for the new officers is the ability to work in a new facility that does not have many of the problems associated with the old one, including overpopulation. If the new Vigo County Jail becomes overpopulated, staffing may again decline.

16. Therefore, it is appropriate for the Court to meet with the parties and the stakeholders, and perhaps other persons with expertise, in a non-adversarial setting, to determine if persons intimately involved with the criminal justice system in Vigo

County have insight as to whether there are steps that can be taken to positively affect the number of persons incarcerated in the Vigo County Jail.

17. Plaintiff suggests that these invited stakeholders should include, but not necessarily be limited to, the Vigo County judges with criminal jurisdiction, the Vigo County Prosecutor, the Chief Vigo County Public Defender, and the Vigo County Chief Adult Probation Officer.

WHEREFORE, plaintiff requests that this Court invite persons who are stakeholders in the Vigo County criminal justice system to discuss that system in order to determine if the stakeholders have ideas as to potential methods of controlling the population of the Vigo County Jail, and for all other proper relief.

Kenneth J. Falk
ACLU of Indiana
1031 E. Washington St.
Indianapolis, IN 46202
317/635-4059
fax: 317/635-4105
kfalk@aclu-in.org

Attorney for the Class